# In the United States Court of Federal Claims

No. 09-693T
(Filed June 11, 2010)

```
*******************************
SEAN M. LIU,                  *
                              *
            Plaintiff,        *    Individual income tax; nonresident alien;
                              *    statute of limitations; Clerk's Office date stamp;
     v.                       *    Priority Mail; "due course of the mails";
                              *    Charlson Realty Co. v. United States, 384 F.2d 434
THE UNITED STATES,            *    (Ct. Cl. 1967).
                              *
            Defendant.        *
                              *
*******************************
```

*Jun Kang*, New York, New York, for Plaintiff.

*Mark A. Ryan*, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., counsel of record for Defendant, with whom were *John A. DiCicco*, Acting Assistant Attorney General and *Steven I. Frahm*, Chief, Federal Claims Section, United States Department of Justice, Washington, D.C.; of counsel was *G. Robson Stewart*, Assistant Chief, Court of Federal Claims Section, United States Department of Justice, Washington, D.C.

---

**OPINION AND ORDER**

---

**DAMICH**, **Judge**

Plaintiff Sean M. Liu has filed suit against the United States for the return of income tax under 26 U.S.C. § 6511(a), (d)(3). Defendant United States ("the Government") now moves the Court, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), to dismiss this action for lack of subject matter jurisdiction because the complaint was not timely filed. Plaintiff cross-moves the Court to correct the filing date of his complaint.

For the reasons set forth below, the Court **DENIES** the Government's motion to dismiss and **GRANTS** Plaintiff's motion to correct the filing date.

I.      **Background**

Plaintiff Sean M. Liu is a nonresident alien currently living in Hong Kong. Compl. ¶ 3. He was a resident alien in the United States for part of the taxable year ending December 31, 2003. *Id.* ¶ 4. On or about September 19, 2007, he filed a U.S. federal income tax return on Forms 1040NR and 1040 as a dual status resident.[1] *Id.* ¶ 7. This return showed an overpayment of $26,241. *Id.*

On October 12, 2007, the Internal Revenue Service ("IRS") disallowed Plaintiff's claim for the refund and informed him of the decision via letter. *Id.* ¶ 10. The IRS denied the claim because Plaintiff had failed to file the claim within the three-year limitation of 28 U.S.C. § 6511(a). The October 12, 2007, letter informed Plaintiff that he had two years from the date of the letter to file a claim with this Court and that the filing of a concurrent administrative appeal with the IRS at any time within the two years did not change the end date of the period. Compl. Ex. A.

On May 18, 2009, Plaintiff, through his attorney, Mr. Jun Kang, filed an administrative appeal with the IRS with respect to the claim for refund. *Id.* ¶ 11. As of March 15, 2010, the date of Plaintiff's last filing, Plaintiff has not yet received a response from the IRS regarding his appeal. Pl.'s Reply in Support of His Cross-Motion to Correct the Filing Date (Pl.'s Reply) at 5.

According to the stamp placed on the complaint by the Clerk's Office, Plaintiff filed his complaint with this Court on October 14, 2009. The complaint alleges that Plaintiff is entitled to a refund in the amount of $26,241 under 26 U.S.C. § 6511(a) and (d)(3). Compl. ¶¶ 7, 9. The complaint was filed *pro se* by Plaintiff, care of Mr. Kang.[2] *See* Compl. at 2. Plaintiff states that he wrote the complaint in Hong Kong and then mailed it to Mr. Kang, a practicing attorney in New York, to review and mail to the Court in order to ensure that it would not be rejected. Pl.'s Reply at 4. The date stamp placed on the complaint by the Clerk's Office, therefore, indicates that the complaint was filed one day after the expiration of the limitations period.

On January 21, 2010, in lieu of an answer, the Government filed the instant motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). On February 25, 2010, Plaintiff filed a response and the instant cross-motion to correct the filing date of the complaint. On March 5, 2010, the Government filed a reply and a response to Plaintiff's cross-motion. On March 15, 2010, Plaintiff filed a reply in support of Plaintiff's cross-motion.

---

[1] The Government's Motion to Dismiss states that the tax return was filed on September 21, 2007. Def.'s Motion at 2. Plaintiff's Reply and Cross-Motion states that Plaintiff filed the tax return on September 17, 2007. Pl.'s Reply and Cross-Motion at 2.

[2] When Plaintiff filed his complaint in this Court, he was acting *pro se*, with Mr. Kang's assistance in a non-legal capacity. Mr. Kang did not become Plaintiff's counsel of record until January 13, 2010, after the filing of the complaint.

## II.     Standard of Review

Subject matter jurisdiction is a threshold matter which may be challenged at any time by the parties, the Court *sua sponte*, or on appeal. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-508 (2006); *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004); *Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 720 (Fed. Cir. 1998). "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States and is 'inflexible and without exception.'" *Steele Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (quoting *Mansfield, Coldwater & Lake Mich. Ry. v. Swan*, 111 U.S. 379, 382 (1884)).

When the Court's subject matter jurisdiction is put into question, the plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence. *Knight v. United States*, 65 Fed. App'x 286, 289 (Fed. Cir. 2003); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir.1988). In ruling on a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982); *Godwin v. United States*, 338 F.3d 1374, 1377 (Fed. Cir. 2003); *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000). If the movant challenges the factual basis for jurisdiction as set forth in the complaint, the Court may inquire into those facts and examine evidence outside the pleadings to determine if jurisdiction exists. *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461-62 (Fed. Cir. 1998); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991). If jurisdiction is found to be lacking, this Court must dismiss the action. RCFC 12(h)(3).

When a complaint is filed *pro se*, the Court holds the pleadings of such plaintiffs to "less stringent standards than formal pleadings drafted by lawyers" and liberally construes those pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court, however, cannot extend this leniency to relieve plaintiffs of their jurisdictional burden. *Kelley v. Sec'y, United States Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

## III.    Discussion

The Court of Federal Claims has jurisdiction to determine claims seeking refunds of taxes paid, insofar as Congress has waived sovereign immunity in tax refund matters, pursuant to 28 U.S.C § 1491. That jurisdiction is limited by prerequisites set forth by Congress. *Flora v. United States*, 357 U.S. 63, 69-72 (1958), *aff'd on reh'g*, 362 U.S. 145 (1960). In refund claims, 28 U.S.C. § 6532(a) establishes such a prerequisite. Section 6532(a) states:

> (1) General rule: No suit or proceeding under § 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun . . . after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

Plaintiff received notice of the disallowance of his claim on October 12, 2007. Compl. Ex. A. October 12, 2009 was Columbus Day, a federal holiday. Pursuant to RCFC 6(a)(3), the last day of the two-year period was then the next full business day, Tuesday, October 13, 2009. The parties agree that the two-year period of § 6532(a) applies in this case and that the statute of limitations period expired on October 13, 2009. The Government contends that jurisdiction is lacking because Plaintiff's complaint was marked received by this Court on October 14, 2009 – one day late - and the claim is therefore barred by § 6532(a). Plaintiff urges this Court to correct the filing date of the complaint to October 13, 2009, the last day of the period, because his complaint was in fact received on October 13, 2009 or should be presumed to have been received October 13, 2009.

### A. Factual Dispute Regarding Date of Receipt of Complaint

RCFC 3 states that "a civil suit is filed when received by the clerk." Plaintiff first argues that his complaint was in fact received on Tuesday, October 13, 2009. As evidence for this fact, Plaintiff relies on a label creation page printout from the United States Postal Service ("USPS") website, a track-and-confirm printout providing delivery confirmation from the same website, the credit card bill of Mr. Kang, and an affidavit from Mr. Kang regarding the mailing of the envelope containing the complaint. Pl.'s Exs. C, E, G, and D. In the affidavit, Mr. Kang states that the complaint was placed "in a sealed flat rate United States priority mail envelope with prepaid shipping label on October 7, 2009" and that "the mail was accepted by the Postal Service on or before October 8, 2009 at New York, New York." Pl.'s Ex. D, Kang Aff. ¶¶ 1, 5. Mr. Kang also states that the mailing label placed on the envelope containing the complaint was the shipping label created October 7 from his account that bore the tracking number 9405 5036 9930 0007 2073 64. *Id.* ¶¶ 2, 3, and 4. The track-and-confirm delivery confirmation accessed via the "Track & Confirm" feature on the USPS website (usps.com) states that the envelope with the shipping label created October 7 was "delivered at 2:00 PM on October 13, 2009 in WASHINGTON, DC 20005." Pl.'s Ex. E. Based on this confirmation, Plaintiff argues that the envelope containing his complaint was received by this Court on October 13.

The Government agrees that "something" was delivered in the 20005 zip code area on October 13, 2009, but contends that Plaintiff has not demonstrated that the complaint was in the envelope bearing the label created October 7 or that the envelope was received by the Clerk's Office on October 13. Def.'s Combined Reply and Response at 10. The Government disputes the validity of Mr. Kang's affidavit because it does not state that he personally assembled or mailed the package and thereby fails the personal knowledge requirement set forth in Rule 602 of the Federal Rules of Evidence ("FRE"). The Government also argues that the track-and-confirm page does not prove that the package in question was received at the specific address of the Court on that date, but only shows that it was in the 20005 zip code. The stamp placed on the complaint by the Clerk's Office indicates, to the contrary, that the complaint was received on October 14, 2009.

The Government's FRE 602 objections to the affidavit are unfounded.[3] While Mr. Kang's affidavit does not specifically state that he personally mailed the envelope, Plaintiff has twice asserted that Mr. Kang personally mailed the complaint. Pl.'s Reply at 2. Drawing all reasonable inferences for Plaintiff, the Court therefore accepts for the purposes of this motion that Mr. Kang mailed the complaint in the Priority Mail envelope with the mailing label created October 7 and with the tracking number 9405 5036 9930 0007 2073 64.[4]

The track-and-confirm printout, however, fails to prove by a preponderance of the evidence that the Priority Mail envelope containing the complaint was in fact received by the Clerk's Office on October 13, 2009. The delivery confirmation merely states, ambiguously, that there was a delivery "in" the general zip code area at 2:00 p.m. on October 13. Pl's Ex. E. Plaintiff has presented no evidence of any other return receipt or signature by an employee of the Court indicating date and time of delivery. The only record of receipt of the mailing at this Court is the stamp placed on the complaint by the Clerk's Office, which gives October 14, 2009 as the date received and filed. Without further evidence regarding delivery to this Court, Plaintiff has not established that the complaint was in fact received on October 13, 2009.

    **B.  Properly Sealed, Addressed, and Deposited Mailing Presumed to Arrive in Due Course of the Mails**

Plaintiff argues that, even if he is unable to prove that his complaint was received on October 13, he is entitled to a presumption that his complaint was timely filed by virtue of the precedent of *Charlson Realty Co. v. United States*, 384 F.2d 434 (Ct. Cl. 1967). The Court of Claims in *Charlson* affirmed in a plurality opinion the "well-established presumption that a letter which is properly sealed, stamped, addressed, and deposited in the United States Mails is presumed to reach the addressee and be received by him in due course of the mails."[5] *Id.* at 442. The case involved a factually similar situation in which the taxpayer sought to file a complaint after a notice of disallowance, and the two-year limitations period of § 6532(a) applied. *Id.* at 438. The complaint was mailed on November 30 from Minnesota and was marked as filed by the Clerk on December 7. *Id.* at 438-39. Based on testimony from USPS employees regarding the usual course and delivery times for mail traveling from Minnesota to D.C., the court concluded that the "due course of the mails" would have placed the complaint at the Court prior to December 7 and that the complaint should therefore be presumed to have been received before

---

[3] The Government suggests that the Court could choose to hold an evidentiary hearing on the objections it raises with regard to Mr. Kang's affidavit. Def.'s Combined Reply at 1, n. 1. The purpose of a hearing would appear to be to have Mr. Kang more clearly state that he is the individual who mailed the complaint, a fact that his affidavit and Plaintiff's filings already suggest. Such a hearing is not necessary to resolve the issues presented in the present motions.

[4] The envelope in which the complaint arrived was not retained by the Clerk's Office. The affidavit of Mr. Kang is therefore the only evidence offered to show that the complaint was placed in the Priority Mail envelope bearing this mailing label.

[5] Decisions from the Court of Claims are binding precedent for the Court of Appeals for the Federal Circuit and for this Court. *South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (*en banc*).

the expiration of the period. *Id.* at 441, 445. The court also stated that the date stamp applied by the Clerk or testimony about the usual customs of the Clerk's Office in stamping complaints is not sufficient evidence to rebut the presumption of timely delivery. *Id.* at 444. The presumption can be rebutted only by "convincing and uncontradicted evidence" showing "positive proof" that the mail did arrive late. *Id.* at 445.

The presumption in *Charlson* was the basis of former Rule 3(b)(2). This rule stated that a party plaintiff may seek a corrective order to change the complaint filing date and, in Part C, listed the requirements for granting such an order:

> (2)(C) In a situation where a complaint is stamped by the clerk after the last date allowed by a statute of limitations for the filing of the complaint, if the complaint was received by the clerk through the mail, it may, by order of the court, upon motion of the party plaintiff, be deemed to have been filed on the last date allowed if there is a proper showing
>
> > (i) that the complaint was sent by registered or certified mail, properly addressed to the clerk of the court at 717 Madison Place, N.W., Washington, D.C. 20005, and with return receipt requested;
> >
> > (ii) that it was deposited in the mail sufficiently in advance of the last date allowed for filing to provide for receipt by the clerk on or before such date in the ordinary course of the mail; and
> >
> > (iii) that the party plaintiff as sender exercised no control over the mailing between the deposit of the complaint in the mail and its delivery.

This rule was recognized as a codification of the presumption discussed in *Charlson*. *See Carter v. United States*, 15 Cl. Ct. 753, 755 (1988) ("Rule 3(b) represents the Court's adoption of a rule to conform to the standard set forth in *Charlson Realty Co. v. United States* . . ."); *White Buffalo Const. Inc. v. United States*, 28 Fed. Cl. 145, 147 (Cl. Ct. 1992) (citing *Charlson* as the source for the "rebuttable presumption" in Rule 3(b)(2)(C)).

The 2002 Amendments to the RCFC, however, removed 3(b). The Notes to the 2002 Amendments state that 3(b) was removed in order to have RCFC 3 better conform to the equivalent rule in the Federal Rules of Civil Procedure and because it was "inappropriate to include a rule of decision as part of a procedural rule." Despite this change, the Government does not explicitly challenge the status of *Charlson* as binding law.[6] The Government instead

---

[6] The Government has referred to *Charlson* as "the standard the Court *used* to use to determine whether to change the filing date of a mailed complaint." Def.'s Motion at 6 (emphasis added). However, the Government has argued only that former Rule 3(b)(2) does not apply and has

contends that Plaintiff is not entitled to the presumption in *Charlson*.

    i) The Complaint Was Properly Sealed, Stamped, Addressed, and Deposited.

    First, the Government argues that Plaintiff is not entitled to the presumption because he has failed to show that the complaint was properly sealed, stamped, addressed, and deposited in the mail. This requirement is clearly part of the language of the presumption stated in *Charlson*. In *Charlson*, there were extensive findings made by a Trial Commissioner regarding the mailing, and the court accepted that it was properly mailed without further discussion. 181 Ct. Cl. at 441. *Charlson* discussed with approval *Rosengarten v. United States*, 181 F. Supp. 275 (Ct. Cl. 1960), a previous case that had *not* applied any presumption of timely delivery based on a failure to demonstrate proper mailing. In *Rosengarten*, the mailing at issue was a refund claim that had supposedly been mailed over eight years before the time of trial but was not in the IRS records. 181 F. Supp. at 277-78. The accountant who mailed the forms could not testify specifically about how he had affixed postage and mailed the documents. The court found this testimony to be insufficient to demonstrate proper mailing. *Id.* at 278.

    The Government argues that this case is similar to *Rosengarten* because Mr. Kang's affidavit fails to state explicitly and definitely that the mail was properly sealed, stamped, addressed, and deposited. It contends that the affidavit does not state that Mr. Kang himself sealed the envelope containing the complaint, made the mailing label for it, placed the mailing label on the envelope, or properly mailed the complaint from a specific Postal Office at a specific time. Although Mr. Kang's affidavit may be more generalized than the Government would prefer, he swears in it that he took the necessary steps for proper mailing. Kang Aff. ¶¶ 1-5. Unlike the claim in *Rosengarten*, the complaint does exist in the Court's records, indicating that it was properly mailed as it did eventually reach the intended destination. In *Rosengarten*, the accountant's inability to provide details about the mailing was crucial to the decision because there was no record of the claim and his testimony was the only evidence that it was properly mailed at all.

    Additionally, affidavits have been accepted as a means of establishing proper mailing. In *Carter v. United States*, 15 Cl. Ct. 753, 754 (1988), the affidavit of the plaintiff's attorney stated only that the complaint had been properly addressed and mailed. The court accepted the affidavit as meeting the first requirement of then-existent Rule 3(b)(2)(C) which contained provisions on proper mailing. Similarly, in *Texas Mex Brick & Import Co. v. United States*, 371 F. Supp. 579, 582-84 (Cust. Ct. 1974), the Customs Court found that affidavits submitted by the plaintiff, and not contested by the defendant, were sufficient to establish that a package was properly mailed and to meet the requirements of a Customs Court rule based on Rule 3(b)(2)(C). The Court finds Mr. Kang's affidavit to be sufficient evidence of proper mailing. Although the affidavit is not precisely drafted, Mr. Kang's general statements regarding the mailing are similar to those relied on and found sufficient in *Carter*. 15 Cl. Ct. at 754. As a practical matter, more specific evidence of how the mailing of this complaint was accomplished is unlikely to be available because the Clerk's Office did not retain the envelope. It can be reasonably inferred

---

accepted *Charlson* as binding as a premise for its later arguments. *See* Def.'s Combined Reply at 6.

that Mr. Kang mailed the complaint, and the Court accepts his statements in the affidavit regarding the mailing as establishing that the complaint was properly sealed, stamped, addressed, and deposited in the mail in New York, New York on or before Thursday, October 8.

> ii) The Complaint Was Mailed in Sufficient Time to Reach the Court in Due Course of the Mails.

Second, the Government contends that Plaintiff has failed to meet the corollary requirement that the mail in question have been sent "in plenty of time" to reach the addressee to establish entitlement to the *Charlson* presumption. *Charlson*, 384 F.2d at 445. The presumption stated in *Charlson* specifically requires that the complaint must have been sent such that it would have arrived on time in "due course of the mails." *Id.* at 442. In reaching its decision, the court in *Charlson* focused on this requirement for the presumption by considering whether there was any evidence of "negligence" by the plaintiff and by relying specifically on testimony from Postal Service employees about when the package in question should have arrived. *Id.* at 441, 445. The *Charlson* court also noted that the presumption "cannot be overturned or rebutted by speculation or suspicion. It can only be destroyed or overcome by convincing and uncontradicted evidence to the contrary which clearly and distinctly establishes a fact so that reasonable minds can draw but one inference." *Id.* at 444.

Former Rule 3(b)(2)(C)(ii) contained a similar requirement that the Court determine that the mail was sent "sufficiently in advance" so as to be received before the end date of the limitations period before correcting the filing date. While Plaintiff disputes that there is any additional requirement beyond proper mailing, the language and subsequent interpretation of *Charlson* do require that the sender demonstrate an objectively reasonable expectation that the package will arrive on time based on the normal operation of the mail in order to be entitled to the strong presumption.

The complaint in this case was mailed on Thursday October 8, 2009. Kang Aff. ¶ 5. The label creation page gives a shipping date of October 8, and the track-and-confirm printout shows that the envelope was sorted in New York at 7:58 p.m. on October 8, 2009. Pl.'s Exs. C and E. With a mailing date of October 8, Plaintiff allowed three full business days for the complaint to reach this Court.[7] The question, then, is whether three days was a reasonable time to allow for

---

[7] Plaintiff argues that he left *five* days for the complaint to reach this Court, and the Government contends that he allowed only *one* full business day. *See* Pl.'s Reply at 4; Def.'s Combined Reply at 9. Pursuant to FRE 201(b), the Court takes judicial notice of the statements appearing on the USPS website regarding business days for the Postal Service. *See Global Computer Enterprise, Inc. v. United States*, 88 Fed. Cl. 52, 70, n. 30 (Fed. Cl. 2009) (stating that judicial notice can be taken of factual material available on the Internet). The USPS website states that the Postal Service business days are Monday through Saturday every week, excluding Postal holidays. *See* United States Postal Service, Frequently Asked Questions, "Postal Business Days" (2010), http://faq.usps.com/eCustomer/iq/usps/request.do?create=kb:USPSFAQ (search "Postal Business Days"; then follow first hyperlink under "Search Results"). The complaint therefore had Friday, October 9, Saturday, October 10, and Tuesday, October 13 to reach this Court.

the complaint to be received by this Court on Tuesday, October 13.

This question requires the Court to examine what the usual course of the mail is for a Priority Mail envelope traveling from New York to Washington, D.C. In previous cases, litigants have sought to establish the course of the mails through testimony and affidavits from USPS employees. In *Charlson*, expert testimony from Post Office employees that the package would have arrived one, two, or even three days prior to the last date under the limitations period informed the court's decision to apply the presumption. *Id.* at 441. In *Carter*, the court found that the plaintiff's attorney's statement that two days was a reasonable period to allow for the complaint to reach the court was not sufficient, particularly when the defendant had offered the affidavit of a USPS employee stating that ordinary delivery time was three days. In *Ross v. United States*, 16 Cl. Ct. 378, 382 (Cl Ct.. 1989), oral assurances made to the plaintiff by a postal worker were not sufficient to convince the court that the complaint was timely mailed.

No affidavits from USPS employees have been presented by either party in this case, and instead Plaintiff has relied on information from the USPS website which states that Priority Mail arrives in two to three days. Pl.'s Ex. J. This delivery time is not guaranteed.[8] The statements on the USPS website, however, are statements to the public that are intended to guide customers in selecting mailing options and are relied on by USPS customers when making decisions about how to mail their documents. Even without a specific guaranteed delivery date, the USPS in effect represents to the public that the ordinary course of the mail for Priority Mail is two to three days. The Court cannot conclude that Plaintiff acted unreasonably in entrusting his complaint to be mailed by his agent via Priority Mail on October 8, 2009.

Statutes of limitations for tax refunds "are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary." *Kavanagh v. Noble*, 332 U.S. 535, 539 (1947). However, the right to a day in court is "one of the most highly prized rights" in the United States. *Charlson*, 181 Ct. Cl. at 448 (Jones, J. concurring). As Judge Yock warned in *Ross*, the court must be wary of depriving plaintiffs of that right especially when considering an issue of "form" instead of "substance." 16 Cl. Ct. at 383. This Court is one of national jurisdiction and receives complaints from across the United States and from different parts of the world. The mail remains a popular means of filing claims, especially when filed *pro se*. The complaint in the present case is just such a complaint: it was filed *pro se* and traveled from Hong Kong to New York to D.C. to reach this Court. The opinion in *Charlson* eloquently summarized the justification for allowing plaintiffs the benefit of the presumption regarding the arrival of their complaints:

> All that [petitioners] can do is mail their petitions in time to arrive at the court in due course of the mails, or journey to Washington and deliver them in person to the clerk. The latter course is far too expensive, time-consuming, and inconvenient to be expected of them. Consequently, every reasonable presumption of the arrival

---

[8] *See* UNITED STATES POSTAL SERVICE DOMESTIC MAIL MANUAL, 123- 2.2 "Service Objectives for Priority Mail" (May 2008), *available at* http://pe.usps.com/text/dmm300/dmm300_landing.htm ("The USPS follows uniform guidelines for distributing and delivering mail but does not guarantee delivery within the specified time").

> of a petition in due course of the mails when sent to the court by mail should be indulged in by this court.

181 Ct. Cl. at 445.

Plaintiff here is entitled to the presumption that his complaint was timely filed. The Government has offered only the stamp placed on the complaint by the Clerk's Office to rebut this presumption, which is not the affirmative evidence that *Charlson* requires for rebuttal. 181 Ct. Cl. at 444. The complaint is therefore presumed to have arrived on October 13, 2009.

**IV.     Conclusion**

For the reasons set forth above, the Court **DENIES** Defendant's motion to dismiss pursuant to RCFC 12(b)(1) and **GRANTS** the Plaintiff's motion to correct the filing date.

 The Clerk of the Court is directed to correct the date of the filing of the complaint to October 13, 2009.

s/ Edward J. Damich  
EDWARD J. DAMICH  
Judge